# Davis v. Pennsylvania State Civil Service Commission

*Cooper & Woodside,* for plaintiffs.

*Jerome H. Gerber* and *Anne X. Alpern,* Attorney General, for defendants.

HERMAN, J., October 13, 1959.—Gertrude M. Davis is an employe of the Bureau of Employment Security in the Department of Labor and Industry of the Commonwealth of Pennsylvania, and is in the "classified service" of the Commonwealth as defined in the Civil Service Act of August 5, 1941, P. L. 752, sec. 3, 71 PS §741.3.

Ethel M. Cox, Lena C. Radel, Jeanette Stumbaugh, Ethel K. Sload and Viola M. Fager are also employed in the same bureau and are also in the classified service.

In 1955 there was commenced by the Commonwealth, under the authority contained in the Civil Service Act, a reclassification of all Commonwealth employes in the classified service and this culminated in a classification plan which after public hearings was adopted by the State Civil Service Commission in July of 1956.

As a result of this reclassification all of the above named employes received new titles, and in two cases, those of Jeannette Stumbaugh and Ethel K. Sload, the new title carried a lower maximum salary than the one each had enjoyed prior to the reclassification, but in no case did the employe actually receive less money after the reclassification than she received before.

Each of these women, believing that the new classification as to her was a demotion within the terms of the Civil Service Act, petitioned the Civil Service Commission for a hearing. Each was denied a hearing by the Civil Service Commission and each has appealed to this court from this denial. The appeal of Gertrude M. Davis is filed to no. 436, that of Ethel M. Cox to no. 437, that of Lena C. Radel to no. 438, that of Jeannette Stumbaugh to no. 439, that of Ethel K. Sload to no. 440 and that of Viola M. Fager to no. 440½, all in Commonwealth docket, 1958.

The cases were consolidated for argument and single briefs were filed by counsel covering all the cases. With the two possible exceptions of Stumbaugh and Sload, which will be more fully discussed later, the same questions are posed in each case, and this opinion will relate to all cases.

The record is deficient in many of the things that could have been included for the benefit of the court and for a complete and better understanding of the matters, but after careful consideration it is our opin-

ion that the appeals must be dismissed and that the records, although meager, are sufficient to conclusively convince us that the Pennsylvania State Civil Service Commission was correct in denying the hearings.

It is true, as appellants point out, that demoted or furloughed employes under the Civil Service Act shall have the same rights as removed employes as to notice and the reasons for such demotion and upon their request the demoted employes shall be entitled to an investigation and a public hearing and thereafter findings and conclusions: Section 807, 7 1PS §741.807. The weakness of appellants' position, however, is clear when the entire Civil Service Act is examined in the light of the facts which preceded these appeals, some of which facts are of public record and of which the court can take judicial notice, and the balance of which are contained in the record. We then see unmistakably that these appellants suffered no demotion.

The Civil Service Act, supra, provides in section 301, as amended, 71 PS §741.301, that the civil service director shall classify all the positions in the classified service of the Commonwealth according to the duties and the responsibilities of each position, designate appropriate titles for each class of position and recommend to the commission the qualifications required for each class of position. Thereafter if the commission adopts the plan, it shall be published, and as soon as possible the director shall, after affording the employes a reasonable opportunity to be heard and after consulting with appointing authorities, allocate each position to its proper class. A schedule of compensation is then arrived at to be applied fairly to each class.

Prior to August 1, 1956, such a classification plan was in effect for, among other branches of the Commonwealth, the Bureau of Employment Security

where appellants were employes, and each appellant fell into a particular classification which carried its particular salary range.

Pursuant to section 303 of the Civil Service Act, 71 PS §741.303[1], the director sometime prior to July 13, 1956, commenced a reclassification which culminated in the plan and the schedule of compensation which, after approval by the commission, became effective August 1, 1956.

Immediately prior to August 1, 1956, Gertrude M. Davis was classified as a senior secretary which position carried a minimum annual salary of $3,270 and a maximum of $3,666. She was actually receiving, however, $3,882 annual compensation. Initially as a result of the said reclassification plan her position was designated "Clerk Stenographer I" for which the minimum annual salary is $2,530 and the maximum is $3,234. In spite of this classification she continued to receive $3,882 salary and then sometime prior to March 14, 1957, the record shows that as a result of a "Reallocation [by the] Survey Staff" she was placed in the "Clerk Stenographer II" class for which the minimum annual salary is $3,077 and the maximum $3,925 and on that date, March 14, 1957, actually began receiving $3,925. (Brackets supplied). We can take judicial notice of the fact which is affirmed in the Commonwealth's brief, and which is a matter of public

---

[1] 71 PS §741.303 provides: "The director shall from time to time, after consultation with State appointing authorities, and with the approval of the commission, establish additional classes and allocate thereto new positions created or positions not included in any previously established class and may divide, combine, alter or abolish existing classes and reallocate positions. If any proposed amendment of the classification plan will affect an existing position the employe holding such position shall have a reasonable opportunity to be heard before final action is taken."

record, that she had, as the law requires "a reasonable opportunity to be heard", and in fact was heard and succeeded in having her classification changed to a higher grade.

Immediately prior to August 1, 1956, Ethel M. Cox was classified as a clerk, which position carried a minimum annual salary of $2,370 and a maximum of $2,820. She was at that time actually receiving $2,604 per annum. As a result of the reclassification plan her position was designated as "Clerk I" for which the minimum annual salary is $2,412 and the maximum is $3,077 and she began receiving $2,791 annually from August 1, 1956.

Immediately prior to August 1, 1956, Lena C. Radel was classified as an "Advanced Clerk", which position carried a minimum annual salary of $3,270 and a maximum of $3,666. She was at that time actually receiving $3,450. As a result of the reclassification plan her position was designated "Clerk II" for which the minimum annual salary is $2,934 and the maximum is $3,742, and she began receiving $3,560 annually from August 1, 1956, which was raised to $3,742 on February 14, 1957.

Immediately prior to August 1, 1956, Viola M. Fager was classified as a "Supervising Clerk", which position carried a minimum annual salary of $3,882 and a maximum of $4,260. She was at that time actually receiving $4,140 per annum. As a result of the reclassification plan her position was designated as "Clerk III" for which the minimum annual salary is $3,560 and the maximum is $4,551, and she began receiving $4,551 annually from August 1, 1956.

In all four of the preceding cases, Davis, Cox, Radel and Fager, the employe's position was placed in a class carrying a higher maximum salary than the class

in which her position existed before the reclassification, and in each case the employe actually received more money after the reclassification than she did before.

The other two cases are slightly different.

In the case of Jeannette Stumbaugh, immediately prior to August 1, 1956, she was classified as a "Principal Clerk", which position carried a minimum annual salary of $3,666 and a maximum of $3,882. She was at that time actually receiving the maximum of $3,882 annually. As a result of the reclassification plan her position was designated "Clerk II" for which the minimum annual salary is $2,934 and the maximum is $3,742 but in spite of this reclassification she continued to receive the annual salary of $3,882.

In the case of Ethel K. Sload, immediately prior to August 1, 1956, she, too, was classified as "Principal Clerk", and although as we have seen the maximum annual salary was $3,882, she was receiving only $3,762 annually. As a result of the reclassification plan her position was also designated "Clerk II" for which we have seen the maximum annual salary is $3,742 or $20 a year less than she was receiving. In spite of this reclassification she continued to receive $3,762 annually, a figure which is $120 per year less than the maximum for the class she was in prior to the reclassification.

There is nothing in the record to indicate that any of appellants were asked to perform different duties than those which they were performing prior to the reclassification.

It is perfectly clear that as to appellants, Davis, Cox, Radel and Fager, there could not be a demotion by any interpretation of the act. The definition contained in section 3 (s) of the Civil Service Act, 71 PS §741.3 (s), is that a " 'Demotion' means a change in status to a

position in a class carrying a lower maximum salary." The new class of all four carries a *higher* maximum salary.

While Stumbaugh was placed in a new class carrying a *lower* maximum salary, there was no change in her status, for she continued to receive the same salary, and this amount was the highest to which she could have attained in her old classification. This could not be a demotion.

Sload, too, continued to receive the same salary she had received before the reclassification, but this sum was $120 per annum *under* the maximum before the reclassification, while now it is $20 per annum above, so that she has lost the expectation of increases totaling $120 annually. If such change in her status had been brought about by the authority appointing her, it could be said that she had been demoted as defined by the act, but a careful reading of the act, especially section 807, 71 PS §741.807, leads us unmistakably to the conclusion that where the change is the result of a general classification or reclassification by the director with the approval of the commission, there is no demotion, regardless of what effect such classification or reclassification might have on an individual employe.

The primary purpose of the Civil Service Act is to provide greater efficiency and economy in the administration of the government of the Commonwealth: Section 2, 71 PS §741.2. In effectuating this purpose, article III of the act provides for establishment of classes of employment, the allocation of positions to classes and the amendment of classes when such amendments become necessary or desirable. It is absolutely essential for the proper administration of the Civil Service Act that the commission have the authority to do these things unfettered by unnecessary re-

strictions. It is immaterial here whether this classification was that provided for in sections 301 and 302, or under section 303, 71 PS §741.301, §741.302 and §741.303[2]. In either case, if the employe had a reasonable opportunity to be heard, she cannot now ask for a hearing before the Civil Service Commission.

None of appellants here complain that she did not have such reasonable opportunity to be heard on the classification, and indeed none of them can complain, for it is a matter of public record that they not only had this opportunity, but four of the six actually exercised their rights by seeking and receiving hearings in their matters. For this reason appellants' arguments that due process was not afforded them is not sound. Their complaint is only that they were denied hearings on their supposed demotions, and under the facts in these cases they are not entitled to such hearings and the commission was right in refusing them.

For the reasons set forth in this opinion we enter the following

*Order*

And now, to wit, October 13, 1959, the appeal of Gertrude M. Davis is dismissed at the cost of appellant.

---

[2] 71 PS §741.301 provides for the establishment of classes, the designation of appropriate titles to them and the recommendation of qualifications for each class as previously mentioned.

71 PS §741.302 provides: "As soon as possible after the adoption of the classification plan, the director shall, *after affording employes a reasonable opportunity to be heard,* and after consultation with appointing authorities and their principal assistants, allocate each position in the classified service to its proper class. Each employe shall assume the classification title of his position." (Italics supplied.)

71 PS §741.303 is quoted in full in footnote 1 herein.